Yvonne WILLIS, Appellant,

v.

Chilton MAVERICK, Appellee.

No. 04-85-00177-CV.

Court of Appeals of Texas,
San Antonio.

Dec. 31, 1986.
Rehearing Denied Jan. 26, 1987.

Paul E. Knisely, Spivey & Grigg, Austin, for appellant.

George H. Spencer, San Antonio, Milton L. Bankston, Joe R. Greenhill, Jr., Austin, for appellee.

Before CADENA, C.J., and BUTTS and DIAL, JJ.

DIAL, Justice.

This is an appeal from a judgment non obstante veredicto in a legal malpractice case.

Appellant Yvonne Willis filed a malpractice suit against her divorce attorney, appellee Chilton Maverick. The suit stemmed from Maverick's representation of both Mrs. Willis and her ex-husband in their divorce proceedings. The Mavericks and Willises were apparently good friends, and when marital discord surfaced in the Willis household, Maverick agreed to draft their divorce settlement. Initially, the Willises agreed on the custody of the children and property division. Maverick drafted the parties' agreement and after one change was made, concerning Mrs. Willis' occupancy of the marital home, the agreement was executed and incorporated into the divorce decree. Approximately ten months later, Mrs. Willis learned that pursuant to the change which had been made in the agreement, Mr. Willis was filing a partition suit on the marital home which Mrs. Willis and the children occupied. Mrs. Willis had mistakenly believed that such a suit was prohibited under their agreement.

At this point she filed a bill of review and was successful in setting aside the divorce and property settlement. She then filed a malpractice action against Maverick on December 21, 1981, alleging negligence and deceptive trade violations. Mrs. Willis asserted that Maverick acted improperly and below acceptable standards in handling the divorce and particularly in drawing up the settlement agreement, which she claimed had been greatly prejudicial to her.

The jury answered the special issues in favor of Mrs. Willis and found that she had incurred actual damages in the amount of $26,568.44. It further awarded exemplary damages in the amount of $610,000. The trial court then granted Maverick's Motion for Judgment Non Obstante Veredicto and entered a take-nothing judgment against Mrs. Willis. She has perfected this appeal and urges us to reverse the trial court's decision and to reinstate the jury findings.

■ In his Motion for Judgment Non Obstante Veredicto, Maverick alleged several independent grounds in support of his claim, but the record does not reflect upon which ground the judgment was based. We must therefore determine if any of these grounds are meritorious and if so, we must uphold the judgment. *See Goldring v. Goldring*, 523 S.W.2d 749, 758 (Tex.Civ. App.—Fort Worth 1975, writ ref'd n.r.e.). We find that Maverick's claimed statute of limitations bar provides a solid ground for the trial court's judgment and therefore affirm on that basis.

The following dates are material to the limitations issue:

The following dates are material to the limitations issue:

| September 1979: | The Willises consult with Maverick concerning their divorce. Divorce petition is filed on September 17, 1979. |
| November 19, 1979: | Divorce decree entered and Settlement Agreement incorporated into divorce judgment. |
| November 26, 1979: | Maverick sends automobile title application to Mrs. Willis for change |

in car title, his last action in the divorce proceeding.

December 10, 1979: Maverick drafts a will for Mrs. Willis.

September 18, 1980: Mrs. Willis receives formal notice of partition suit.

December 21, 1981: Mrs. Willis files malpractice suit against Maverick.

Maverick claims that Mrs. Willis' claim is barred by the two year tort limitations statute because her cause of action accrued more than two years prior to the filing of the malpractice suit and that the attorney-client relationship ended more than two years before the suit was initiated. Mrs. Willis, on the other hand, claims that she is not barred by the statute since her cause of action did not accrue until September of 1980, when she received notice of the partition suit. She argues alternatively that the four year statute of limitations governs this action and that her suit therefore was filed in a timely manner. We disagree with both contentions.

■ First, we conclude that the two year statute of limitations governs the present case. TEX.CIV.PRAC. & REM.CODE ANN. § 16.003 (Vernon 1986, *formerly* TEX.REV.CIV.STAT.ANN. art. 5526 (Vernon Supp.1985). The prevailing view is that a cause of action for legal malpractice is in the nature of a tort and is thus governed by the two year limitations statute. *Liles v. Phillips,* 677 S.W.2d 802, 807 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e.); *Gabel v. Sandoval,* 648 S.W.2d 398, 399 (Tex.App.—San Antonio 1983, writ dism'd); *Citizens State Bank of Dickinson v. Shapiro,* 575 S.W.2d 375, 386 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.). We reject Mrs. Willis' claim that the present case can technically be viewed as an "action for debt" and therefore should be governed by the four year limitations statute. Courts have consistently rejected this argument and have refused to disguise tort actions as contract claims, so that plaintiffs could enjoy a longer limitation period. Whatever label is placed on it, a suit for legal malpractice is in the nature of a tort action and thus the two year statute of limitations governs. *Citizens State Bank of Dickin-*

*son v. Shapiro,* 575 S.W.2d 375, 386 (Tex. Civ.App.—Tyler 1978, writ ref'd n.r.e.).

Having determined that the two year statute governs this case, we must next determine precisely when the statute began to run and whether or not the limitations period has been tolled. The parties are in sharp disagreement on this issue. Mrs. Willis claims that limitations began to run when she sustained damages and argues that the date she learned of the partition suit (September 18, 1980) was the date upon which her cause of action "accrued." In essence, she urges that we adopt the "discovery rule." Conversely, Maverick argues that limitations began to run at the *latest* on December 10, 1979, the date upon which he drafted a will for Mrs. Willis—his last act as her legal counsel. Maverick further asserts that any "legal injury" occurred on the date of the divorce decree—November 19, 1979.

■ We agree with Maverick's assessment of the accrual of Mrs. Willis' cause of action. The accrual of her claim is not measured at the time of discovery, as Mrs. Willis suggests, but at the time of the "legal injury." This occurs when the force which produces the injury is wrongfully put in motion and has caused harm such that damages exist for which suit may be maintained. *Liles v. Phillips,* 677 S.W.2d 802, 808 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.); *Pack v. Taylor,* 584 S.W.2d 484, 486 (Tex.Civ.App.—Fort Worth 1979, writ ref'd n.r.e.). In a recent legal malpractice case, the Austin Court of Appeals discussed at length the concept of "legal injury" and when it occurs in a malpractice action. The court stated:

It is readily apparent ... that harm to the plaintiff's legally protected interest, by reason of the defendant's earlier conduct, need not be finally established or an inevitable consequence of the conduct. Rather, the specific and concrete event which follows the defendant's conduct need raise only a *risk* of harm to that interest.

*Zidell v. Bird,* 692 S.W.2d 550, 557 (Tex. App.—Austin 1985, no writ).

■ The court went on to hold that the clients' allegation that their attorney negligently advised them to consummate a land sale contract accrued *at the latest* when the clients conveyed property to a second party under his "standby contract." *Id.* at 558. The court stated that the cause of action accrued when the plaintiffs acted on the legal advice, irrevocably fixing their legal position in regard to the property. *Id.* Based on this analysis and the foregoing authorities, it is clear that Mrs. Willis' alleged injury accrued on the date that the Settlement Agreement was executed and entered with the divorce decree—November 19, 1979.

This court has also rejected the "discovery rule" in determining when an action for legal malpractice accrues. *Jimenez v. Maloney*, 646 S.W.2d 673, 675–76 (Tex.App.—San Antonio 1983, writ dism'd). In *Jimenez*, we specifically followed a Dallas Court of Appeals ruling which had declined to apply the discovery rule to legal malpractice cases. *McClung v. Johnson*, 620 S.W.2d 644, 647 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). We also adopted the Dallas Court's view regarding the tolling of limitations. This court held:

> We conclude that the relationship [attorney-client] creates a duty, and breach of the duty is tantamount to concealment. We, therefore, hold that failure to disclose operates to toll the statute of limitations for so long as the duty exists, and that the duty to disclose ceases when a relationship giving rise to the duty ends.

*Jimenez*, 646 S.W.2d at 675, *citing McClung*, 620 S.W.2d at 647.

■ Turning to the present facts, it is clear that the attorney-client relationship terminated *at the latest* on December 10, 1979, when Maverick drafted the will for Mrs. Willis. Under the *Jimenez* and *McClung* holdings, the discovery rule does not apply and any duty to disclose on the part of Maverick terminated on the date the will was drafted and signed. The statute of limitations began to run on that date. Mrs. Willis herself testified to that effect:

Q: All right. Now, this—about September 1980—Oh, well, wait a minute. Mr. Maverick drew a will for you a couple of weeks later. We've gone back and the date of that seems to be December 10, 1979; do you remember that?

A: Yes, I do.

Q: And was that the last thing that Mr. Maverick did for you as a lawyer?

A: As far as I know, it is.

This testimony, when considered in light of the entire record, convinces us that limitations was tolled until December 10, 1979, at the latest. Since Mrs. Willis did not file her malpractice action until December 21, 1981, she exceeded the two year period and her suit is therefore barred by limitations. We must note here that our holding is not to be construed as suggesting that limitations *automatically* begin to run when the attorney-client relationship ends. Fraudulent concealment by an attorney which extends beyond the period of representation will toll the accrual date. *McClung*, 620 S.W.2d at 648. However, no allegations of fraud were made in the present case.

We find that the trial court acted properly in entering a judgment non obstante veredicto and hereby affirm its order.

CADENA, Chief Justice, dissenting.

The result reached by the majority opinion is unacceptable because (1) it is based on an indefensible view of what constitutes a cause of action and, in effect, bars a cause of action before it has come into existence and (2) it violates the "open courts" provision of the Texas Constitution.

By ignoring the elementary and traditional concept that actual loss or damage is necessary to the existence of a cause of action for negligence, the Texas decisions which the majority opinion follows produce "a result so absurd and unjust" that it "ought not to be possible." *Hays v. Hall*, 488 S.W.2d 412, 414 (Tex.1973).

A suit based on negligence cannot be maintained until the defendant's negligent conduct has proximately caused actual loss or damage to the plaintiff. W.L. PROSSER & W.P. KEETON, THE LAW OF TORTS, § 30, p. 165 (5th ed. W.P. Keeton, ed., 1984).

As stated in RESTATEMENT (SECOND) TORTS, § 907, comment a:

> When a cause of action for a tort exists but no harm has been caused by the tort ... judgment will be given for nominal damages consisting of a trivial award against a wrongdoer who has caused no harm of an insignificant harm. If actual damages is necessary to the cause of action, as in negligence, nominal damages are not awarded.

The notion that a cause of action "accrues" before it comes into existence is based on the somewhat arcane theory of a "legal" injury which, despite the absence of harm, occurs at the time the negligent conduct takes place. The courts may rightfully claim sole credit for the existence of this harmless injury. The idea seems to be that if I am crossing a street and a motorist roars past me at an excessive rate of speed I have a cause of action against him even though he did not strike me. For those who experience some difficulty in accepting the concept that a cause of action exists even though an attempt to assert it must of necessity result in a judgment that plaintiff take nothing, the explanation offered in *Zidell v. Bird*, 692 S.W.2d 550, 557 (Tex. Civ.App.—Austin 1985, no writ), which is quoted in the majority opinion, will undoubtedly make the concept less comprehensible.

What *Zidell* language declares, apparently in all seriousness, is that the risk of harm, which is the only circumstance which justifies characterization of conduct as negligent, itself constitutes injury, although but for this "legal" injury, no harm or damage has resulted. The necessary result is that every negligent act, even if it produces no actual loss, damage or harm subjects the actor to "liability," although it is clear that he will be liable for nothing. This is a strange kind of liability. If the defendant is not liable because of the lack of actual injury, it should be clear that plaintiff's cause of action is purely illusory.

The prevention of stale claims, which is the purpose of statutes of limitation, is generally considered a desirable objective. The same cannot be said for a rule which bars a claim before it comes into existence.

In *Neagle v. Nelson*, 685 S.W.2d 11, 12 (Tex.1985), a statute which attempted to impose the rule adopted by the majority in this case was held to violate the open courts provision of the Texas Constitution.[1] TEX. CONST. art. 1, § 13. It is true that *Neagle* involved a case of medical, rather than legal, malpractice. But if the provisions of our constitution protect a citizen from legislative acts that abridge his right to sue before he has a reasonable opportunity to discover the wrong and bring suit, there is no defensible reason for not applying the same rule to attorneys, unless we simply desire to extend protection to lawyers which is denied to other professionals.

I would reverse the judgment of the trial court and remand the cause for trial under the "discovery" rule.

---

1. After the *Neagle* decision, the Supreme Court decided that the Medical Liability Act, which eliminated the discovery rule in medical malpractice cases, could be constitutionally applied to a case where plaintiff discovered his injury (hole in bladder) 2 years before he filed suit. The Court also pointed out that plaintiff had a reasonable length of time in which to file suit after he discovered his injury. *Morrison v. Chan*, 699 S.W.2d 205 (Tex.1985). None of the factors relied on in *Morrison* to distinguish *Neagle* is applicable to this case.

*Morrison* in no way affects the holding in *Neagle* that a rule barring plaintiff's claim before he has a reasonable opportunity to discover the wrong is unconstitutional.